```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                          EASTERN DIVISION
```

**DONALD L. McCORMICK,**

        **Plaintiff,**

   vs.                                  Civil Action 2:10-CV-1115
                                                Judge Frost
                                                Magistrate Judge King

**MICHAEL J. ASTRUE, Commissioner**
**of Social Security,**

        **Defendant.**

## REPORT AND RECOMMENDATION

       This is an action instituted under the provisions of 42 U.S.C. §§405(g), 1383 for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income. This matter is now before the Court on plaintiff's *Statement of Errors* and the Commissioner's *Memorandum in Opposition*.

       Plaintiff Donald L. McCormick filed his applications for benefits on August 14, 2006, alleging that he has been disabled since December 31, 2003. The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge. On May 13, 2009, plaintiff, represented by counsel, appeared and testified at an administrative hearing, as did William T. Cody, who testified as a vocational expert.

       In a decision dated June 29, 2009, the administrative law judge found that, despite plaintiff's severe impairments, he nevertheless has the residual functional capacity for a reduced range of medium work. Because this residual functional capacity permits the performance by plaintiff of a significant number of jobs, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social

Security Act. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on October 14, 2010.

Plaintiff was 53 years of age on the date the administrative law judge issued his decision. *Page ID#* 80, 209. Plaintiff has a "limited" education, *Page ID#* 80, 91, and past relevant work experience as a truck driver. *Page ID#* 64-95, 216.

**Physical Impairments**

Plaintiff was admitted to the hospital on November 24, 2004 for an acute myocardial infarction complicated by cardiac arrest manifested by ventricular fibrillation. *Page ID#* 337. Plaintiff underwent a percutaneous transluminal coronary angioplasty ("PTCA") with the placement of two stents. *Id.*, 342-53. It was noted at the time that plaintiff had a history of cardiac catheterizations on September 2, 1998 and January 16, 2001 and a PTCA with a stent on January 22, 2001. *Page ID#* 342.

Plaintiff has also been treated at the Veterans Administration ("VA") Hospital. *Page ID#* 354-445, 449-79, 481-511. When seen in the clinic for a check-up on November 2, 2005, plaintiff reported chronic ankle pain upon weight bearing. *Page ID#* 393-95. On March 8, 2006, plaintiff complained of osteoarthritis at multiple sites, but especially chronic low back pain. Plaintiff requested and received Vicodin. *Page ID#* 389. At a July 21, 2006 office visit, plaintiff denied problems with his feet and refused a foot examination. Plaintiff was diagnosed with a ganglion on his wrist and osteoarthritis involving multiple sites and chronic back pain with radiculitis. Plaintiff's condition was stable.

*Page ID#* 384-87. On July 25, 2006, plaintiff complained of swelling in his feet and muscle spasms in his back extending down his left leg. *Page ID#* 383. He believed that he was having an adverse reaction to his cholesterol medication, which was then stopped. *Id.*

Plaintiff presented to an emergency room on July 26, 2006, due to atypical precordial chest pain involving the left anterior and lateral chest around the axillary area, radiating down the left arm. *Page ID#* 270. Clinical examination revealed a normal back, normal motion in the extremities and no motor or sensory deficits. *Page ID#* 275-76. John Caffaratti, M.D., plaintiff's cardiologist, assessed atypical precordial chest pain, "which is distinctly different than previously described angina." *Page ID#* 271. Dr. Caffaratti characterized plaintiff's chest pain as non-cardiac in origin.

In September 2006, a state agency physician reviewed the record and opined that plaintiff had the residual functional capacity to lift and/or carry up to fifty pounds occasionally and up to twenty-five pounds frequently; he could stand, walk and/or sit about six hours in an eight-hour workday. *Page ID#* 325. There were no postural limitations. *Page ID#* 326. That assessment was affirmed by another state agency physician in January 2007.

In March 2007, when seen for routine follow up, plaintiff complained of intermittent back pain. *Page ID#* 452-54. Plaintiff again refused a foot examination, *id.,* as he did yet again on July 24, 2007. *Page ID#* 451. On June 5, 2008, plaintiff denied any problems with his feet. *Page ID#* 464.

Paul D. Mumma, D.O., a family physician, treated plaintiff from March 2007 through April 2009. On March 15, 2007, Dr. Mumma found paresis of plaintiff's left forefinger at the metacarpophalangeal joint, with intact sensation. *Page ID#* 521. On July 12, 2007, Dr. Mumma noted a continued flexor defect and diagnosed an avulsion injury of the flexor tendon. *Page ID#* 520. On November 5, 2007, the finger remained nonfunctional, but was beginning to flex a bit on its own. *Id.* Plaintiff reported to Dr. Mumma that he had seen a hand surgeon who diagnosed possible carpel tunnel syndrome; there was no follow-up, however. *Id.* On January 15, 2008, plaintiff complained of left shoulder pain. *Page ID#* 419. Examination revealed an enlarged acromioclavicular joint for which Dr. Mumma administered a Marcaine and Depo-Medrol injection. *Id.*

A May 22, 2008 myocardial perfusion imaging study revealed a left ventricle ejection fraction of 37%. *Page ID#* 525. The cardiologist interpreted the study as documenting at least moderate left ventricle systolic dysfunction. *Id.*

On October 15, 2008, plaintiff complained of burning and pain in his feet as a result of neuropathy. *Page ID#* 516. A follow-up examination at the VA clinic in January 2009 had a good result. *Page ID#* 508.

A January 2009 examination at the VA clinic revealed lower back pain on motion and palpation. *Page ID#* 496.

Dr. Mumma examined plaintiff on April 2, 2009, after plaintiff had fallen backwards onto a concrete block, hurting his back. *Page ID#* 450. Plaintiff also reported pain in the right shoulder of months' duration. *Id.* On clinical examination, plaintiff's right shoulder was

"quite tender" with positive abduction. *Id.* Plaintiff's lumbar spine was moderately tender. *Id.* There were no sensory or motor deficits. *Id.* Dr. Mumma administered another Marcaine and Depo-Medrol injection. *Id.*

An April 2009 MRI of plaintiff's lumbar spine showed degenerative disc changes most prominent at L4-5 and L5-S1; there was also significant right foraminal narrowing at L4-5 and moderate left neural foraminal narrowing at L5-S1. *Page ID#* 514.

On April 16, 2009, Dr. Mumma noted plaintiff's complaints of "persistent lumbar pain, spasm, and tenderness with pain down his legs." *Page ID#* 513. Plaintiff further complained that prolonged standing was "quite uncomfortable." *Id.* Examination showed tenderness at L5-S1. *Id.* Dr. Mumma offered plaintiff a referral for possible neuro injections. *Id.* Plaintiff declined Dr. Mumma's offer. He was continued on pain medication. *Id.*

**Mental Impairments**

Plaintiff was examined by consulting psychologist Lee Roach, Ph.D., on September 5, 2006. *PageID#* 283-90. Plaintiff, who lived alone, reported that he cut the grass, groomed the yard, worked on cars, fished a great deal and performed household chores. *Page ID#* 286. Dr. Roach noted that plaintiff was cooperative, his affect was depressed, and he had no suicidal ideation. *Page ID#* 285. Plaintiff was oriented, his memory was intact and his insight was marginal. *Page ID#* 285-86. Plaintiff's memory and recall-attention span were adequate. *Id.* Immediate recall was functional and long-term memory was appropriate. *Id.* I.Q. testing resulted in a verbal IQ score of 78, a performance IQ score of 69, and a full-scale IQ score of 72. The psychologist estimated that

plaintiff's functioning fell in the borderline range. *Page ID##* 285, 287. On the WRAT-3, plaintiff's "reading level [fell] below the basic literacy level of 4th grade." *Id.* Dr. Roach diagnosed a major depressive disorder, borderline intellectual functioning, and avoidant personality disorder. He assigned a GAF score of 55.[1] *Page ID#* 288.

Dr. Roach opined that plaintiff was moderately impaired in his ability to understand, remember and carry out one or two step job instructions and to interact with supervisors and co-workers. *Page ID#* 289. Plaintiff's ability to maintain attention, concentration, persistence and pace sufficient to perform simple repetitive tasks was markedly impaired. According to Dr. Roach, "[a]t the present time claimant appears to have attention lapses and difficulties with memory and concentration to restrict work activities. He appears to be limited in terms of maintaining an appropriate work pace" *Id.* Dr. Roach also found plaintiff markedly impaired in his ability to withstand the stress and pressures associated with day-to-day work activity, noting that he "[s]hows mental limitations in dealing with personal problems resulting in sustained periods of depression, anxiety and racing thoughts preventing a regular sleep pattern. He recognizes the signs of depression but his coping strategies for emotional and behavioral issues are marginal." *Id.*

---

[1] "GAF," Global Assessment Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Commissioner*, 61 Fed.Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34. A GAF of 55 indicates "moderate symptoms ... or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)." *Id.*

On September 25, 2006, a state agency psychologist reviewed the record and opined that plaintiff had mild restrictions in his activities of daily living, moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace, and no episodes of decompensation. *Page ID#* 306. According to this psychologist, plaintiff could perform simple repetitive jobs with no strict production quotas and only superficial interaction with others. *Page ID#* 294.  Another state agency psychologist later affirmed that assessment. *Page ID#* 447.

Plaintiff testified at the administrative hearing that he experiences chest pains perhaps two to three times per week upon exertion. He must sit down for 15 to 20 minutes to cool down. *Page ID#* 99. He carries nitroglycerin, but has not had to use the medication for two years. *Id.* He takes Vicodin and uses a breathing machine four times a day. *Page ID#* 102. He experiences shortness of breath "pretty much all the time," even when walking on flat ground. *Page ID#* 103-04.

Plaintiff also complained of low back pain which was getting worse. *Page ID#* 104.  The pain is constant and averages 6 or 7 on a 10-point scale.  The pain radiates down both legs and into his feet, mostly on the right. *Page ID#* 105. Vicodin reduces, but does not eliminate, this pain. *Id.*

Plaintiff also complained of problems with both shoulders, worse on the right. *Page ID#* 106.  He complained of problems with his hands, but noted that his doctors could not find anything wrong with them despite testing. *Page ID#* 107. According to plaintiff, his doctors had diagnosed neuropathy in his feet, for which he must elevate his feet. *Id.*

7

His feet swell depending on the amount of walking he does. *Page ID#* 49.

Plaintiff also testified that he is depressed. *Page ID#* 112. However, he does not use anti-depressant medication nor has he seen a mental health specialist. *Page ID#* 113.

As to his activities of daily living, plaintiff testified that he is able to mow the grass on a riding lawn mower, microwave meals and do some light housekeeping. *Page ID#* 115-16.  He can no longer work on cars because he cannot bend over, lift or crawl. *Page ID#* 116. Plaintiff sits on a bench at a fishing pond every day for about 20-30 minutes. *Page ID#* 117. He "used to do a whole lot of fishing." *Id.*

Plaintiff estimated that he is able to lift or carry up to 10 pounds. *Page ID#* 118.  He takes daily walks of between a block and a half and three city blocks, although he must stop a couple of times. *Id.* He estimates that he can stand for about as long as he can sit. *Id.*

The vocational expert was asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity to lift/carry 50 pounds occasionally and 25 pounds frequently; to stand, walk or sit 6 hours a day each with normal breaks; never climb ladders, ropes or scaffolds; avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation; avoid concentrated exposure to hazardous machinery and unprotected heights; avoid jobs requiring depth perception. The claimant would be limited to  simple, routine and repetitive tasks; could perform only work that required superficial interaction with others; and must avoid a rapid, constant pace. *Page ID#* 121-24. In response, the vocational expert testified that such a claimant could perform approximately 3,000 jobs in the local economy as a cleaner/janitor, laborer and packer. *Page ID#* 124.

Asked to assume the limitations contained in Dr. Roach's consultative report, the vocational expert responded that such restrictions would preclude or limit work. *Page ID#* 124-26. Asked by plaintiff's counsel to add a sit/stand option, the vocational expert responded that a "sit/stand option alone would limit consideration to the sedentary level." *Page ID#* 127.

The administrative law judge found that plaintiff suffers the severe impairments of coronary artery disease; status post myocardial infarctions with percutaneous transluminal coronary angioplasties on January 22, 2001 and November 23, 2004; morbid obesity; chronic obstructive pulmonary disease/asthma; non-insulin dependent diabetes mellitus; low back pain; presbyopia/amblyopia in the right eye with diminished vision but not blindness; depression; borderline intellectual functioning; and avoidant personality disorder. However, these conditions, whether considered singly or in combination, neither meet nor equal a listed impairment. Rather, the administrative law judge found, plaintiff has the residual functional capacity to perform a reduced range of medium work. Specifically, the administrative law judge found:

> [Plaintiff] can occasionally lift and/or carry 50 pounds and can frequently lift and/or carry 25 pounds. He can stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday. He can sit (with normal breaks) for a total of about six hours in an eight-hour workday. Pushing and/or pulling are unlimited, other than as shown for lift and/or carry. Due to his limited vision and hypoglycemic attacks the [plaintiff] should avoid ladders, ropes, and scaffolds. Also, due to his chronic obstructive pulmonary disease/asthma, the [plaintiff] should avoid concentrated exposure to fumes, odors, dust, gases, etc. [Plaintiff] should also avoid
> concentrated exposure to hazardous machinery, unprotected heights, and jobs requiring acute depth perception. The claimant is limited to simple, routine, and repetitive tasks, with no more than superficial interaction with people. He should avoid a constantly rapid pace.

Relying on the testimony of the vocational expert, the administrative law judge found that this residual functional capacity permits the performance by plaintiff of jobs that exist in significant numbers in the national economy.

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

Plaintiff complains about the administrative law judge's evaluation of plaintiff's low back pain. He specifically contends that the administrative law judge failed to consider the entire record in this regard, failed to address the opinion of plaintiff's treating physician, Dr. Mumma, and erred by relying on the opinion of state agency physician in formulating plaintiff's residual functional capacity. This Court agrees.[2]

As noted by plaintiff, the administrative law judge included "low back pain" as one of plaintiff's severe impairments. *Page ID#* 78. The administrative law judge specifically considered plaintiff's back impairment by reference to Listing 1.04 of the Listing of Impairments at Step 3 of the sequential evaluation, *Page ID#* 77, commenting that there is no essential evidence of nerve root compression. *Id*. However, the administrative law judge failed to mention this severe impairment again, nor did he expressly acknowledge plaintiff's complaints of low back pain with radiculopathy and allegations of resulting limitations in his ability to lift, walk, stand and sit. Importantly, the administrative law judge failed to note the repeated references to the condition contained in the VA clinic records, nor did he note the April 2009 MRI, which documented degenerative changes and neural foraminal narrowing. *See Page ID#* 514. Even in assessing the credibility of plaintiff's subjective complaints, the administrative law judge made no mention of plaintiff's persistent complaints of low back pain. *See Page ID#* 79.

Under these circumstances, the Court concludes that the administrative law judge failed to fairly consider the record as a whole.

---

[2] Plaintiff also asserts other arguments, some related to this contention. Because the Court finds that this contention is persuasive, the Court will not separately consider those other arguments.

It cannot be said that the decision of the administrative law judge is supported by substantial evidence.

It is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that the matter be **REMANDED** to the Commissioner for further consideration of plaintiff's subjective complaints of pain.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

<u>Date</u>: February 1, 2012                    <u>s/Norah McCann King</u>
                                                Norah McCann King
                                                United States Magistrate Judge